1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   David W. Quinto (Bar No. 106232)
2  davidquinto@quinnemanuel.com
   Rachel L. Fiset (Bar No. 240828)
3  rachelfiset@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Attorneys for Academy of Motion Picture
   Arts and Sciences

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  ACADEMY OF MOTION PICTURE          CASE NO. _____
12  ARTS AND SCIENCES, a California
   nonprofit corporation,              **COMPLAINT FOR COPYRIGHT
13                                      INFRINGEMENT**
         Plaintiff,
14                                      **DEMAND FOR JURY TRIAL**
        v.
15
   BRICE CARRINGTON, an individual;
16  and DOES 1-10, inclusive,

17          Defendants

18

19

20

21

22

23

24

25

26

27

28

00734/3145191.1

1    Plaintiff Academy of Motion Picture Arts and Sciences (the

2    "Academy") complains of defendants and alleges:

3                              Jurisdiction and Venue

4         1.     This action arises under the copyright laws of the United States,

5    Title 17, United States Code.  This Court has federal question jurisdiction under

6    28 U.S.C. §§ 1331 and 1338(a).  Venue lies in this district under 28 U.S.C.

7    §§ 1391(b) and 1400(a).

8                              Intradistrict Assignment

9         2.     Because this action is an Intellectual Property Action within the

10   meaning of Civil Local Rule 3-2(c), the action is to be assigned on a district-wide

11   basis.

12                              Nature of Action

13        3.     In this action, the Academy seeks injunctive relief and damages

14   for copyright infringement willfully committed by Defendants in violation of the

15   laws of the United States.

16                              Parties

17        4.     The Academy is, and at all times herein mentioned was, a

18   nonprofit corporation organized and existing under the laws of the State of

19   California, with its principal place of business in Los Angeles County, California.

20        5.     The Academy is informed and believes, and on that basis alleges,

21   that defendant Brice Carrington ("Carrington" or "Mr. Carrington"), is an individual

22   who currently resides in the County of Ventura, State of California.  The Academy

23   is informed and believes, and on that basis alleges, that from 2001 through

24   December 2005 Mr. Carrington resided in the County of Alameda, State of

25   California, and that during that time Mr. Carrington devised and carried out a

26   scheme to defraud investors by persuading them to invest money with him under

27   false pretenses.  That scheme depended on his acquisition and use of copies of the

28

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1  Academy's internationally famous "©Oscar®" statuette that he falsely claimed to
2  have won.

3          6.      The true names and capacities of the defendants sued herein as
4  Does 1 through 10, inclusive, are not known to the Academy, and the Academy
5  therefore sues said defendants by such fictitious names.  The Academy will amend
6  this Complaint to allege their true names and capacities when the same are
7  ascertained.

8                              Factual Background

9          7.      The Academy was founded in 1927 by a now legendary group of
10 36 film industry leaders for the purposes, *inter alia,* of advancing motion picture arts
11 and sciences and promoting cultural, educational, and technological progress.  As
12 part of its effort, the Academy formally recognizes persons who make outstanding
13 contributions in their respective creative fields.  Thus, the Academy holds annual
14 Academy Awards® ceremonies, during which it confers its Academy Award of
15 Merit, known to the public as the "Oscar," in over 20 categories of achievement.

16         8.      The Academy has registered the "©Oscar®" statuette as a work
17 of art with the Copyright Office of the United States of America.  A copy of the
18 Certificate of Registration, No. G 38512, is attached as Exhibit A and, by this
19 reference, is incorporated herein as though set forth at length.  The Academy has
20 also renewed the registration of its copyright in the "©Oscar®."  A copy of the
21 Certificate of Registration of a Claim to Renewal of Copyright, No. R 443432, is
22 attached as Exhibit B and, by this reference, is incorporated herein as though set
23 forth at length.  The Academy's copyright in the "©Oscar®" is valid and subsisting.

24         9.      Winners of the Academy Award of Merit are given copies of the
25 "©Oscar®" statuette in recognition of their achievements in motion picture making.
26 The copies of the "©Oscar®" statuette are given subject to certain restrictions,
27 including prohibitions against the sale, transfer, or copying of the statuette.  The

28

1 Academy has never distributed, or offered to distribute, copies of the "©Oscar®"

2 statuette to the public.

3       10.    When the Academy has commissioned the production of

4 "©Oscar®" statuettes, such production has always been performed exclusively for

5 the Academy. Manufacturers are not permitted to copy the statuette for delivery to

6 any other person or entity.

7 <u>Defendants' Infringement</u>

8       11.    On August 4, 2009, Carrington was criminally charged with wire

9 fraud in violation of 18 U.S.C. § 1343, forfeiture in violation of 18 U.S.C.

10 § 981(a)(1)(C) and 28 U.S.C. § 2461 (c), and tax evasion in violation of 26 U.S.C.

11 § 7201 for devising a scheme to defraud investors to obtain money and property by

12 false and fraudulent pretenses. Upon information and belief, the Academy alleges

13 that Carrington has now pleaded guilty to crimes relating to these charges. As part

14 of his scheme to defraud, Carrington allegedly represented to investors that he was a

15 three-time "©Oscar®" winner and had paid a substantial sum to a well-known

16 Walnut Creek, California jeweler to reproduce copies of the "©Oscar®" statuette as

17 props to lure investors to invest money in his sound effects design projects. The

18 Criminal Complaint is attached as Exhibit C.

19       12.    On August 6, 2009, the Academy became aware of Carrington's

20 possession of one or more fake "©Oscar®" statuettes through an article in the San

21 Francisco Chronicle entitled "Man Who Claimed to Be Oscar Winner Charged."

22 The article stated that Carrington "paid a 'substantial sum' to a Walnut Creek jeweler

23 to create a fake Academy Award, which he displayed at his home and showed off in

24 pictures." The article is attached as Exhibit D.

25       13.    On or around August 15, 2009, the Academy informed

26 Carrington's counsel that the "©Oscar®" is a work of art copyrighted by the

27 Academy and that only the Academy has the legal right to contract for its production

28 or to distribute it. The Academy requested that Carrington inform it of the identity

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1    of the "Walnut Creek jeweler" used to manufacture the fake "©Oscar®" statuette.

2    Carrington declined to do so.

3          14.    On September 4, 2009, Carrington entered into a plea agreement

4    in the United States District Court, Northern District of California, Oakland

5    Division, for Case No. CR 09-0791-DLJ, in which he states that:

6            a. From January 2001 and continuing through about
December 2005, I devised and carried out a scheme to
7        defraud investors who invested money with me for the
purpose of designing sound effects.

8

9            b. To carry out the scheme I represented to
investors that I was a three-time Oscar wining sound
effects designer and that I was well-established in the
10       entertainment industry and had been involved in many
Hollywood productions, when, in fact, this was false.

11

12            c. To carry out the scheme I paid a substantial sum
to a Walnut Creek, California jeweler to have a
reproduction of an Oscar statuette made for me to use as a
13       prop to support my claims that I was [sic] Hollywood
insider in order to lure investors into investing money with
14       me.

15            d. In furtherance of my scheme the fake Oscar
statuettes and photographs of me with fake Oscar
16       statuettes were displayed in my home at parties to lure
investors into investing money with me.

17

18    Carrington's plea agreement is attached as Exhibit E.

19          15.    The actions of Carrington and the Doe Defendants, including the

20    "Walnut Creek jeweler" that reproduced, transferred, sold and/or manufactured one

21    or more fake "©Oscar®" statuettes in violation of the Academy's intellectual

22    property rights were willful. The Academy has no choice but to file suit to protect

23    its valuable intellectual property rights.

24                 <u>CLAIM FOR RELIEF</u>

25        (Copyright Infringement — 17 U.S.C. § 106, *et seq.*)

26          16.    The Academy repeats and incorporates herein by reference each

27    and every allegation contained in paragraphs 1 through 15 above, as though set forth

28    at length.

17.     Defendant Carrington on information and belief, successfully displayed, transferred, used and aided in the reproduction and manufacture of an unauthorized copy of the Academy's copyrighted "©Oscar®" statuette.

18.     The defendant Does on information and belief, successfully, transferred, sold, reproduced and/or manufactured an unauthorized copy of the Academy's copyrighted "©Oscar®" statuette.

19.     Defendants' acts violate the Academy's exclusive rights under the Copyright Act, including without limitation the Academy's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.  Defendants' reproduction, manufacture, use and transfer of the Academy's copyrighted "©Oscar®" statuette has been without the Academy's consent and for commercial purposes. Accordingly, defendants have engaged in direct and contributory infringement of the Academy's copyrighted works.

20.     Defendants' wrongful conduct has been willful, deliberate and malicious and without excuse or justification.  The Academy is entitled to recover its actual damages and defendants' profits or statutory damages, together with the Academy's costs of suit and attorneys' fees pursuant to 17 U.S.C. § 505, for Defendants' willful infringement.

21.     The Academy has suffered serious injury as a result of the foregoing willful infringement of its copyright.  In addition, the Academy will continue to suffer serious injury if Defendants are not enjoined from selling, auctioning, reproducing, manufacturing, distributing, displaying or otherwise using the "©Oscar®" statuette.  The Academy has no adequate remedy at law for Defendants' acts of infringement.  The Academy is therefore entitled to a preliminary and permanent injunction enjoining Defendants' acts of infringement.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1  

### PRAYER FOR RELIEF

2  WHEREFORE, the Academy demands judgment:

3  1.    That, pursuant to 17 U.S.C. § 502, Defendants, as well as all

4  persons acting under the direction, control, permission, or authority of Defendants,

5  or any of them, and all persons acting in concert therewith, be enjoined during the

6  pendency of this action, and permanently thereafter, from directly or indirectly

7  displaying, marketing, distributing, advertising, transferring, selling, auctioning,

8  assigning, pledging, encumbering, hypothecating or in any way disposing of any

9  facsimile, copy, replica, reproduction, picture, or depiction of the "©Oscar®"

10 statuette, or otherwise infringing the Academy's copyright in the "©Oscar®"

11 statuette;

12 2.    That, pursuant to 17 U.S.C. §§ 503 and 509, all displays,

13 facsimiles, copies, replicas, reproductions, pictures, and depictions of the

14 "©Oscar®" statuette in Defendants' possession, custody, or control, and all pre-

15 fabricated displays or kits, molds, matrices or other devices used for assembling,

16 manufacturing, or reproducing the aforesaid items, be impounded or seized and

17 forfeited to the United States;

18 3.    That Defendants pay to the Academy the full costs of this action

19 and the Academy's reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

20 4.    That the Academy recover its actual damages and Defendants'

21 profits or, in the alternative, that the Academy recover statutory damages for willful

22 infringement pursuant to 17 U.S.C. § 504;

23

24

25

26

27

28

1          5.     That the Academy have such other and further relief as the Court

2    deems just and proper.

3

4    DATED:  October 14, 2009          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES. LLP
5

6                                 By _David Quinto /JJ_____

7                                    David W. Quinto
                                     Attorneys for Academy of Motion Picture
8                                    Arts and Sciences

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1

### DEMAND FOR JURY TRIAL

2        Plaintiff Academy of Motion Picture Arts and Sciences hereby

3 demands trial by jury pursuant to Fed. R. Civ. Proc. § 38(b) and Civil Local Rule 3-

4 6.

5

6 DATED: October 14, 2009       QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES. LLP

7

8                            By _David Quinto /JJ_____

9                               David W. Quinto
                              Attorneys for Academy of Motion Picture

10                               Arts and Sciences

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

CLASS   G unp.No.  38512

# Copyright Office
## Of the United States of America
# THE LIBRARY OF CONGRESS
### ★  ★  ★  W A S H I N G T O N  ★  ★  ★

## *Certificate of Copyright Registration*

**This is to certify**, in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that a photograph or other identifying reproduction of the ...........................................................................

work of art - sculpture

named herein has been deposited in this Office, under the provision of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of

Academy of Motion Picture Arts and Sciences,

1201 Taft Bldg.,

Los Angeles, Calif.

Title:  Academy of Motion Picture Arts and Sciences First

Award. (A modernistic "gold knight" ... )

Author of United States.    (2 views)

Copy received ............. Sept. 2, 1941

Entry: Class G., unp., No. 38512

[SEAL]

*C. L. Bouvé*
Register of Copyrights.

# EXHIBIT B

Page 3

FORM R

# Certificate of Registration of a Claim to Renewal Copyright

**REGISTRATION NO.**

R 443432

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

   (a) Name ...Academy.of.Motion.Picture.Arts.and.Sciences.......

   Address .9038 Melrose Avenue, Los Angeles, California.......

   Claiming as ..........Proprietor.of.copyright.in.a.work.made.for.hire.....

   (b) Name ....................................................................................

   Address ................................................................................

   Claiming as ..........................................................................

   (c) Name ....................................................................................

   Address ................................................................................

   Claiming as ..........................................................................

2. (a) **Title:**

   ......Academy.of.Motion.Picture.Arts.and.Sciences.First.Award.........

   ...A.modernistic.gold.knight.mounted.on.a.pedestal.-.known.as.OSCAR

   (b) **Renewable Matter:**

   ....................................................................................

   (c) **Contribution to Periodical or Other Composite Work:**

   ....................................................................................

   (Title of periodical or composite work)

   If a periodical, give: Vol. ...............; No. ..............; Issue ..............; Date ...................

3. **Authors of Renewable Matter:**

   .........Academy.of.Motion.Picture.Arts.and.Sciences................

4. **Facts of Original Registration:**

   Original registration number: Class ........G..............; No. ..38512..........

   If registered as published, give date of publication .......................................

   If registered as unpublished, give date of registration ....September.2,.1941.......

   Original copyright claimant ....Academy.of.Motion.Picture.Arts.and.Sciences

   **EXAMINER**

   BO

   *Complete all applicable spaces on next page*

# EXHIBIT C

Case4:09-cr-00791-DLJ    Document1    Filed08/04/09    Page1 of    Submit by Email

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☒ INFORMATION   ☐ INDICTMENT   ☐ SUPERSEDING

---

**OFFENSE CHARGED**

18 U.S.C. § 1343 - Wire Fraud
(5 counts)

(Also See Attached Sheet)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:

18 U.S.C. § 1343 - 20 years prison, $ 250,000 fine, 3 years Supervised Release, 100 assessment

---

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

DEFENDANT - U.S.

▶ BRICE CARRINGTON

DISTRICT COURT NUMBER

CR 09    0791    DLJ

---

**PROCEEDING**

Name of Complaintant Agency, or Person (&Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. Att'y   ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM   JOSEPH P. RUSSONIELLO

☒ U.S. Att'y   ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)   THOMAS MOORE, AUSA, TAX DIV.

---

**DEFENDANT**

IS NOT IN CUSTODY

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

NORTHERN DISTRICT OF CALIFORNIA

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   } ☐ Fed'l   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   If "Yes" give date filed   Month/Day/Year

DATE OF ARREST   ▶   

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY   ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time:

Before Judge:

Comments:



Attachment to Information Penalty Sheet
BRICE CARRINGTON

26 U.S.C. § 7201 - Tax Evasion (4 Counts)

    - 5 years prison
    - $250,000 fine
    - 3 years supervised release
    - $100 special assessment

CR 09        0791

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 - Forfeiture (1 Count)

    2003 Lamborghini Murcielago, VIN number ZA9BC10U33LA12504;
    2005 Hummer H2, VIN number 5GRGN23U45H132504;
    2006 Mercedes SL500R, VIN number WDBSK75F86F111893.

1 │ JOSEPH P. RUSSONIELLO
    United States Attorney
2

3                                      E-filing

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                       OAKLAND DIVISION

11 │ UNITED STATES OF AMERICA,          No. CR      0791 DLJ

12 │         Plaintiff,          )      VIOLATIONS:

13 │         v.                  )      18 U.S.C. § 1343 - Wire Fraud (5 Counts);
                                )      18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §
14 │ BRICE CARRINGTON           )      2461 - Forfeiture (1 Count); 26 U.S.C. § 7201
                                )      Tax Evasion (4 Counts)
15 │         Defendant.          )
                                )
16 │ _____  )      OAKLAND VENUE

17                       I N F O R M A T I O N

18 │ The United States Attorney charges:

19                          BACKGROUND

20 │     At all times relevant to this Indictment:

21 │     1.      BRICE CARRINGTON resided in Alameda County, California.

22 │     2.      BRICE CARRINGTON held and was in control of account number xxxxxx-

23 │ 20463 at Bank of America in San Ramon, California.

24 │          THE SCHEME TO DEFRAUD INVESTORS

25 │     3.      Beginning at an time unknown, but no later than in or about January 2001 and

26 │ continuing through about December 2005, in the Northern District of California and elsewhere,

27 │ the defendant,

28 │ ///

1                            BRICE CARRINGTON,

2 did knowingly and intentionally devise a scheme and artifice to defraud as to a material matter,

3 and to obtain money and property by means of materially false and fraudulent pretenses,

4 representations, promises, and omissions, knowing that the pretenses, representations, promises,

5 and omissions were false and fraudulent when made.

6      <u>MANNER AND MEANS OF THE SCHEME TO DEFRAUD THE INVESTORS</u>

7         4.     As part of the scheme to defraud investors, and in order to induce investors to give

8 money to him, CARRINGTON engaged in certain conduct and made certain material false

9 representations, promises, and omissions, including, but not limited to, the following:

10         a.     CARRINGTON represented to investors that he was a three-time Oscar

11 winning sound effects designer who was well-established in the entertainment industry and had

12 been involved in many Hollywood productions, when, in fact, this was false.

13         b.     CARRINGTON, in furtherance of this representation, paid a substantial

14 sum to a well-known Walnut Creek, California jeweler to have a reproduction of an Oscar

15 statuette made for use as a prop to support his claims to being a Hollywood insider for the

16 purpose of luring investors into investing money with him.

17         c.     CARRINGTON, in furtherance of this scheme, displayed in his home at

18 parties the fake Oscar statuettes and photographs of him with these fake Oscar statuettes to lure

19 investors into investing money with him.

20         d.     CARRINGTON, in furtherance of his scheme purchased, with investors

21 money and without their knowledge, a Lamborghini Murcielago, a Hummer H2 and a Mercedes

22 SL500R which he used as props to lure investors into investing money with him.

23         e.     CARRINGTON entered into written and oral agreements with at least ten

24 investors and promised them double and even treble returns on various sound effects design

25 projects.

26         f.     The agreements CARRINGTON had with his investors did not allow for

27 the use of the investors' funds towards CARRINGTON'S personal expenses, but

28 CARRINGTON, in fact, used a substantial portion of the investors' funds towards his personal

Information
No. CR                              2

1  expenses.

2  <u>COUNTS ONE THROUGH FIVE</u>: (18 U.S.C. § 1343 – Wire Fraud)

3      5.    Paragraphs 1 through 4 are re-alleged as if fully set forth herein.

4      6.    On or about the dates set forth below, in the Northern District of California, and

5  elsewhere, for the purpose of executing the material scheme to defraud the investors and to

6  obtain money by materially false and fraudulent pretenses, representations, promises, and

7  omissions, the defendant,

8                  BRICE CARRINGTON,

9  did knowingly transmit and cause to be transmitted the following wire communications in

10 interstate commerce:

| COUNTS | DATE | MONETARY TRANSACTION |
|---|---|---|
| ONE | 08/19/04 | L.S. wired $25,000 from her Bank One Acct. #xxxxx00013 in Chicago, Illlnois to Bank of America Acct. # xxxxxx-20463 in San Ramon, California |
| TWO | 08/19/04 | T.B. wired $25,000 from his Union Planters National Bank Acct. #xxxxx00084 in Memphis, Tennessee to Bank of America Acct. # xxxxxx-20462 in San Ramon, California |
| THREE | 08/19/04 | A.H. wired $50,000 from her UBS Financial Services Acct. #xxxxx07993 in Weehawken, New Jersey to Bank of America Acct. # xxxxxx-20463 in San Ramon, California |
| FOUR | 08/19/04 | L.S. wired $50,000 from her First National Bank of Oelwin Acct. #xxxxx01558 in Oelwin, Iowa to Bank of America Acct. # xxxxxx-20463 in San Ramon, California |
| FIVE | 08/27/04 | G.M. wired $81,000 from his Suntrust Bank Account Acct. #xxxxx00104 in Atlanta, Georgia to Bank of America Acct. # xxxxxx-20463 in San Ramon, California |

25     Each in violation of Title 18, United States Code, Section 1343

26 <u>FORFEITURE ALLEGATION</u>: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.§ 2461(c) Forfeiture)

27     7.    The allegations of Counts One through Five of this Indictment are re-alleged and

28 by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the

1 | provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §2461(c).

2 |     8.     Upon a conviction of any of the offenses alleged in Counts One through Five, the

3 | defendant,

4 | **BRICE CARRINGTON,**

5 | shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

6 | all right, title, and interest in property, real and personal, involved in said violation or any

7 | property traceable to such property, including, but not limited to, the following:

8 |     a.     A model year 2003 Lamborghini Murcielago, VIN number

9 | ZA9BC10U33LA12504;

10 |     b.     A model year 2005 Hummer H2, VIN number 5GRGN23U45H132504;

11 |     c.     A model year 2006 Mercedes SL500R, VIN number

12 | WDBSK75F86F111893.

13 |     9.     If, as a result of any act or omission of the defendant, any of the said property

14 |     a.     cannot be located upon the exercise of due diligence;

15 |     b.     has been transferred to, sold to, or deposited with, a third person;

16 |     c.     has been placed beyond the jurisdiction of the Court;

17 |     d.     has been substantially diminished in value; or

18 |     e.     has been commingled with other property which cannot be divided without

19 | difficulty; any and all interest defendant has in any other property (up to the value of the property

20 | identified in paragraph 8) shall be forfeited to the United States, pursuant to Title 21, United

21 | States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

22 |     All in violation of Title 18, United States Code, Section 981(a)(1)(C)and Rule 32.2 of the

23 | Federal Rules of Criminal Procedure.

24 | <u>COUNT SIX</u>: (26 U.S.C. § 7201 – Tax Evasion)

25 |     10.     That on or about September 2, 2003, in the Northern District of California, the

26 | defendant,

27 | **BRICE CARRINGTON,**

28 | then a resident of Pleasanton, California, who during the calendar year 2002 was married, did

Information
No. CR               4

1 | willfully and knowingly attempt to evade and defeat a part of the income tax due and owing by

2 | him and his spouse to the United States of America for the calendar year 2002 by preparing,

3 | signing, and delivering, and causing to be prepared, signed and delivered, a false and fraudulent

4 | joint U.S. Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, which

5 | return was filed with the Internal Revenue Service, wherein it was stated that the tax due and

6 | owing to the United States for the calendar year 2002 was zero dollars, whereas, as he then and

7 | there well knew and believed, their joint taxable income for the said calendar year was

8 | substantially in excess of that stated on said return and that upon said additional joint taxable

9 | income a substantial additional tax was due and owing to the United States of America.

10 |      In violation of Title 26, United States Code, Section 7201.

11 | COUNT SEVEN: (26 U.S.C. § 7201 – Tax Evasion)

12 |      11.    That on or about October 11, 2004, in the Northern District of California, the

13 | defendant,

14 |                    BRICE CARRINGTON,

15 | a resident of Pleasanton, California, who during the calendar year 2003 was married, did willfully

16 | and knowingly attempt to evade and defeat a part of the income tax due and owing by him and

17 | his spouse to the United States of America for the calendar year 2003 by preparing, signing, and

18 | delivering, and causing to be prepared, signed and delivered, a false and fraudulent joint U.S.

19 | Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, which return

20 | was filed with the Internal Revenue Service, wherein it was stated that the tax due and owing to

21 | the United States for the calendar year 2003 was zero dollars, whereas, as he then and there well

22 | knew and believed, their joint taxable income for the said calendar year was substantially in

23 | excess of that stated on said return and that upon said additional joint taxable income a

24 | substantial additional tax was due and owing to the United States of America

25 |      In violation of Title 26, United States Code, Section 7201.

26 | COUNT EIGHT: (26 U.S.C. § 7201 – Tax Evasion)

27 |      12.    That on or about the October 14, 2005, in the Northern District of California, the

28 | defendant,

Information
No. CR                5

1

BRICE CARRINGTON,

2   a resident of Pleasanton, California, who during the calendar year 2004 was married, did willfully

3   and knowingly attempt to evade and defeat a part of the income tax due and owing by him and

4   his spouse to the United States of America for the calendar year 2004 by preparing, signing, and

5   delivering, and causing to be prepared, signed and delivered, a false and fraudulent joint U.S.

6   Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, which return

7   was filed with the Internal Revenue Service, wherein it was stated that the tax due and owing to

8   the United States for the calendar year 2004 was $1,578.00, whereas, as he then and there well

9   knew and believed, their joint taxable income for the said calendar year was substantially in

10   excess of that stated on said return and that upon said additional joint taxable income a

11   substantial additional tax was due and owing to the United States of America.

12      In violation of Title 26, United States Code, Section 7201.

13   COUNT NINE: (26 U.S.C. § 7201 – Tax Evasion)

14      13.    That on or about the October 20, 2006 in the Northern District of California, the

15   defendant,

16

BRICE CARRINGTON,

17   a resident of Pleasanton, California, who during the calendar year 2005 was married, did willfully

18   and knowingly attempt to evade and defeat a part of the income tax due and owing by him and

19   his spouse to the United States of America for the calendar year 2005 by preparing, signing, and

20   delivering, and causing to be prepared, signed and delivered, a false and fraudulent joint U.S.

21   Individual Income Tax Return, Form 1040, on behalf of himself and his spouse, which return

22   was filed with the Internal Revenue Service, wherein it was stated that the tax due and owing to

23   the United States for the calendar year 2005 was zero dollars, whereas, as he then and there well

24   knew and believed, their joint taxable income for the said calendar year was substantially in

25   excess of that stated on said return and that upon said additional joint taxable income a

26   substantial additional tax was due and owing to the United States of America.

27   ///

28   ///

Information
No. CR                      6

1    In violation of Title 26, United States Code, Section 7201.

2                                            JOSEPH P. RUSSONIELLO
                                             United States Attorney
3

4    Dated:   _8 - 4 - 09_

5                                            BRIAN   STRETCH
                                             Chief, Criminal Section
6    Approved as to Form

7    _____
     THOMAS MOORE
8    Assistant United States Attorney
     Chief, Tax Division
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Information
No. CR                                    7

# EXHIBIT D



advertisement | your ad here

Technology   Markets   Small Business   Chron 200   Real Estate

## Man who claimed to be Oscar winner charged

Henry K. Lee, Chronicle Staff Writer
Thursday, August 6, 2009

PRINT    E-MAIL    SHARE    COMMENTS (34)        FONT | SIZE:

**(08-05) 17:31 PDT** – A Pleasanton man who falsely claimed he was a three-time Oscar-winning sound designer has been charged in federal court with defrauding investors of more than $3 million in an investment scheme.

GET QUOTE

Enter Symbol    [GO]

Symbol Lookup

MORE BUSINESS
FINRA fines Citigroup $600K over tax trading plans 10.12.09
American is first woman to win Nobel in economics 10.12.09
Chicago Cubs file Chapter 11 to speed team's sale 10.12.09

Brice Carrington, 46, will appear today in U.S. District Court in Oakland to be arraigned on five counts of wire fraud and four counts of tax evasion. Federal prosecutors said in court documents that he masterminded a scheme in which he promised at least 10 investors "double and even treble returns on various sound-effects design projects."

Carrington's attorney, Randy Sue Pollock, did not respond to requests for comment Wednesday.

Carrington, born Antonio Wilson, is accused of defrauding victims of at least $3.3 million, Internal Revenue Service Agent Maya Raichbart wrote in a recently unsealed affidavit.

Carrington allegedly lured investors by spinning a series of yarns, claiming he had won three Oscars and had an "extensive background in sound for motion pictures," with ties to the Academy of Arts and Sciences, Raichbart wrote. He also falsely claimed that he had worked on films like "King Kong," "Jurassic Park," "Snakes on a Plane" and "Spider-Man," authorities said.

Carrington, in fact, paid a "substantial sum" to a Walnut Creek jeweler to create a fake Academy Award, which he displayed at his home and showed off in pictures, officials said.

Two alleged victims wired Carrington $25,000 each, two $50,000 each and one man wired $81,000, investigators said.

Carrington later admitted that he had made misleading and incorrect statements. In a statement in 2007, he wrote, "I commemorate the Oscars by creating a version of the main characters in films that win Oscars."

Authorities are seeking forfeiture of Carrington's 2003 Lamborghini Murcielago, a 2005 Hummer H2 and a 2006 Mercedes SL500R. He bought the cars, together worth more than $490,000, with investors' money and used them as props to lure other investors, authorities said.

Carrington also used the proceeds to pay the mortgage on his $2.65 million home on Via Di Salerno in a gated community on the grounds of the Ruby Hill Golf Club in Pleasanton, and for personal expenses, authorities said.

Carrington has a previous forgery conviction in San Diego and a larceny conviction in Dallas, court records show.

*E-mail Henry K. Lee at hlee@sfchronicle.com.*

*This article appeared on page C - 1 of the San Francisco Chronicle*

# EXHIBIT E

1 | JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

**FILED**

SEP 0 4 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

2

3 | BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

4 | Thomas Moore  (ASBN 4305-O78T)
Assistant United States Attorney

5

6 | 450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone:  (415) 436-7017

7 | Fax: (415) 436-6748

8 | Attorneys for the United States of America

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | OAKLAND DIVISION

12 | UNITED STATES OF AMERICA,                    No.  CR 09-0791-DLJ

13 |              Plaintiff,                      PLEA AGREEMENT

14 |              v.

15 | BRICE CARRINGTON,

16 |              Defendant.

17

18 |        I, BRICE CARRINGTON, and the United States Attorney's Office for the Northern

19 | District of California (hereafter "the government") enter into this written plea agreement (the

20 | "Agreement") pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

21 | The Defendant's Promises

22 |        1.       I agree to plead guilty to count five of the captioned information charging me with

23 | Wire Fraud, in violation of 18 U.S.C. § 1343.  I agree that the elements of the offense are as

24 | follows: (1) I knowingly devised a scheme to defraud for obtaining money or property by means

25 | of false or fraudulent pretenses, representations or promises; (2) I made false statements as part

26 | of the scheme that were material; (3) I used the wires in interstate commerce in furtherance of the

27 | scheme; (4) I had an intent to defraud.  I agree that the maximum penalties are as follows:

28 | ///

1       a.     Maximum prison sentence           20 years

2       b.     Maximum fine                   $250,000

3       c.     Maximum supervised release term    3 years

4       d.     Forfeiture

5         I agree to plead guilty to count seven of the captioned indictment charging me with Tax

6 Evasion, in violation of 26 U.S.C. § 7201.  I agree that the elements of the offense are as follows:

7 (1) I knowingly and willfully (2) made an affirmative attempt to evade income taxes for the year

8 2003 and (3) I knew that I owed more tax than I reported was due on my income tax return for

9 the year 2003.  I agree that the maximum penalties are as follows:

10       a.     Maximum prison sentence           5 years

11       b.     Maximum fine                   $250,000

12       c.     Maximum supervised release term    3 years

13         I understand that, because I am pleading guilty to more than one count, the Court may

14 order the sentences on those counts to run consecutively.

15       2.     I agree that I am guilty of the offenses to which I will plead guilty, and I agree that

16 the following facts are true:

17       a.     From January 2001 and continuing through about December 2005, I

18 devised and carried out a scheme to defraud investors who invested money with me for the

19 purpose of designing sound effects.

20       b.     To carry out the scheme I represented to investors that I was a three-time

21 Oscar winning sound effects designer and that I was well-established in the entertainment

22 industry and had been involved in many Hollywood productions, when, in fact, this was false.

23       c.     To carry out the scheme I paid a substantial sum to a Walnut Creek,

24 California jeweler to have a reproduction of an Oscar statuette made for me to use as a prop to

25 support my claims that I was Hollywood insider in order to lure investors into investing money

26 with me.

27       d.     In furtherance of my scheme the fake Oscar statuettes and photographs of

28 me with fake Oscar statuettes were displayed in my home at parties to lure investors into

PLEA AGREEMENT
No. CR 09-0791 DLJ               2

1  investing money with me.

2           e.      To further my scheme I purchased, with investors money and without their

3  knowledge, a Lamborghini Murcielago, a Hummer H2 and a Mercedes SL500R which I used as

4  props to lure investors into investing money with him.

5           f.      To further my scheme I entered into written and oral agreements with at

6  least ten investors and promised them double and even treble returns on various sound effects

7  design projects.

8           g.      Although the agreements I had with my investors did not allow me to use

9  the investors' funds for my personal expenses, I used a substantial portion of the investors' funds

10  towards my personal expenses.

11           h.      Between 2001 and 2005, I received approximately $4,042,480 from

12  investors, but I used no more than $430,000 of those funds towards designing sound effects.  As

13  a result of my participating in this scheme to defraud, as discussed herein and alleged in the

14  information, I earned no less than $3,612,480 in illegally derived proceeds.

15           i.      On August 27, 2004, as part of the scheme I devised to defraud investors, I

16  caused G.M. to make an interstate wire of $81,000 from his account at Suntrust Bank in Georgia

17  to my account at Bank of America in California.

18           j.      On October 11, 2004 when I was a resident of Pleasanton, California (I am

19  currently a resident of Ojai, California) and when I filed my Form 1040 for the year 2003, I knew

20  that I should have reported all of my gross receipts (an additional $581,500) and taxable income

21  on the return and that I owed additional income taxes of $141,897 on the unreported amounts and

22  was required to pay that amount to the IRS.  Instead, I filed the false Form 1040 for the 2003 tax

23  year reporting zero taxes owed to evade my true and correct tax liabilities.

24       3.      I agree to give up all rights that I would have if I chose to proceed to trial,

25  including the rights to a jury trial with the assistance of an attorney; to confront and

26  cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or

27  raise any other Fourth or Fifth Amendment claims; to any further discovery from the

28  government, and to pursue any affirmative defenses and present evidence.

PLEA AGREEMENT
No. CR 09-0791 DLJ                  3

1    4.    I agree to give up my right to appeal my convictions, the judgment, and orders

2    of the Court. I also agree to waive any right I may have to appeal any aspect of my sentence,

3    including any orders relating to forfeiture and/or restitution.

4    5.    I agree to waive any right I may have to file any collateral attack on my

5    convictions or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, or

6    motion under 18 U.S.C. § 3582, at any time in the future after I am sentenced, except for a claim

7    that my constitutional right to the effective assistance of counsel was violated.

8    6.    I agree not to ask the Court to withdraw my guilty pleas at any time after they are

9    entered unless the Court declines to accept the sentence agreed to by the parties. I agree that the

10    government may withdraw from this Agreement if the Court does not accept the agreed upon

11    sentence set out below. I agree that if the Court does not accept the agreed upon sentence set out

12    below, the statute of limitations shall be tolled from the date I signed the plea agreement until

13    the date the Court does not accept the plea agreement. I further agree not to ask the Court for a

14    continuance of my sentencing hearing without the consent of the government.

15    7.    I agree that my sentence should be calculated pursuant to the 2001 Sentencing

16    Guidelines. I understand that the Court, while not bound to apply the Guidelines, must consult

17    those Guidelines and take them into account when sentencing, together with the factors set forth

18    in 18 U.S.C. § 3553(a). I also agree that the Sentencing Guidelines range will be calculated as

19    follows and that I will not ask for any other adjustment to or reduction in the offense level or for

20    a downward departure from the Guidelines range:

21    a.    Base Offense Level, U.S.S.G. §2B1.1 (6 plus 18)        24

22    b.    Specific offense characteristics, U.S.S.G. §2B1.1(b)(2)(A)  2

23    c.    Amount of loss:                                      $4,042,480

24    d.    Acceptance of Responsibility:  If I meet the requirements
         of U.S.S.G. § 3E1.1, I may be entitled to a three level
25       reduction for acceptance of responsibility, provided that I
         forthrightly admit my guilt, cooperate with the Court and
26       the Probation Office in any presentence investigation
         ordered by the Court, and continue to manifest an
27       acceptance of responsibility through and including the
         time of sentencing.                                   -3

28

PLEA AGREEMENT
No. CR 09-0791 DLJ                    4

e.       Adjusted offense level:                          23

8.   I agree that a reasonable and appropriate disposition of this case, under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have agreed, is as follows: if the Court determines my Criminal History category is I, a 48 month term of imprisonment; 3 years of supervised release (with conditions to be fixed by the Court), a fine within Sentencing Guideline 23, $200 special assessment and $4,184,367 restitution.

I agree that, regardless of any other provision in this Agreement, the government may and will provide to the Court and the Probation Office all information relevant to the charged offenses or the sentencing decision.  I agree that I will make a good faith effort to pay any fine, forfeiture or restitution I am ordered to pay.  Before or after sentencing, I will, upon request of the Court, the government, or the U.S. Probation Office, provide accurate and complete financial information, submit sworn statements and give depositions under oath concerning my assets and my ability to pay, surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine, forfeiture, or restitution.  I agree to pay the special assessment at the time of sentencing.

9.   I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence.  I also agree not to violate the terms of my pretrial release (if any); not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement.  I agree that, if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in paragraphs 12 through 14 below, but I will not be released from my guilty pleas.

10.   I agree to forfeit my interest in the following property (hereinafter "subject property"):

a.       A model year 2003 Lamborghini Murcielago, VIN number ZA9BC10U33LA12504;

PLEA AGREEMENT
No. CR 09-0791 DLJ                                    5

1     b.    A model year 2005 Hummer H2, VIN number 5GRGN23U45H132504;

2     c.    A model year 2006 Mercedes SL500R, VIN number WDBSK75F86F111893.

3     I admit that the subject property was purchased from the proceeds of the scheme I devised

4 to defraud investors, and thus forfeitable to the United States pursuant to the provisions of 18

5 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and the procedures outlined in Rule 32.2 of the

6 Federal Rules of Criminal Procedure and Title 21, United States Code, Section 853. I relinquish

7 any and all right, title, and interest I may have in the subject property and agree that such right,

8 title and interest can be forfeited to the United States without further notice to me. I further

9 agree not to assist any other individual in any effort to falsely contest their forfeiture. I further

10 agree to waive all constitutional and statutory challenges in any manner (including direct appeal,

11 habeas corpus, or any other means) to any forfeiture (administrative or judicial) carried out in

12 accordance with this Plea Agreement on any grounds, including that the forfeiture

13 (administrative, civil or criminal) constitutes an excessive fine or punishment and statute of

14 limitations.

15     11.    I agree that this Agreement contains all of the promises and agreements between

16 the government and me, and I will not claim otherwise in the future.

17     12.    I agree that this Agreement binds the U.S. Attorney's Office for the Northern

18 District of California only, and does not bind any other federal, state, or local agency.

19 The Government's Promises

20     13.    The government agrees to move to dismiss any open charges pending against the

21 defendant in the captioned indictment at the time of sentencing.

22     14.    The government agrees not to file any additional charges against the defendant

23 that could be filed as a result of the investigation that led to the captioned indictment.

24     15.    Assuming the Court determines that the defendant's Criminal History Category is

25 I, the government agrees that the reasonable and appropriate sentence in this case should be as set

26 forth in paragraph 8 above, unless the defendant violates the Agreement as set forth in paragraphs

27 8 through 9 above or fails to accept responsibility.

28 The Defendant's Affirmations

PLEA AGREEMENT
No. CR 09-0791 DLJ                6

1     16.    I confirm that I have had adequate time to discuss this case, the evidence, and this

2    Agreement with my attorney, and that she has provided me with all the legal advice that I

3    requested.

4     17.    I confirm that while I considered signing this Agreement, and at the time I signed

5    it, I was not under the influence of any alcohol, drug, or medicine.

6     18.    I confirm that my decision to enter a guilty plea is made knowing the charges that

7    have been brought against me, any possible defenses, and the benefits and possible detriments of

8    proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no

9    one coerced or threatened me to enter into this Agreement.

11    Dated: ___9.9.09___

12                             BRICE CARRINGTON
                                   Defendant

13                             JOSEPH P. RUSSONIELLO
                             United States Attorney

14    Dated: ___9/4/9___

15                             THOMAS MOORE

16                             Assistant United States Attorney
                             Chief, Tax Division

17    I have fully explained to my client all the rights that a criminal defendant has and all the

18    terms of this Agreement. In my opinion, my client understands all the terms of this Agreement

19    and all the rights he is giving up by pleading guilty, and, based on the information now known to

20    me, his decision to plead guilty is knowing and voluntary.

21    Dated: ___9/4/09___

22                             RANDY SUE POLLOCK
                             Attorney for Defendant

PLEA AGREEMENT
No. CR 09-0791 DLJ                7